**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**BECKY S.**

                              **Plaintiff,**                              **22-CV-06321-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

_____

**DECISION AND ORDER**

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #11.

**BACKGROUND**

On September 17, 2018, plaintiff, at the age of 38, protectively filed a Title XVI application for supplemental security income ("SSI") benefits. Dkt. #5, pp. 238-247.[1] On September 25, 2018, she also filed an application for Title II disability benefits. Dkt. #5, pp. 236-237. In both applications, plaintiff alleged an onset date of November 13, 2003. Dkt. #5, pp. 269, 292, 328. However, plaintiff later amended the onset date to May 31, 2018, withdrew her Title II application, and proceeded only on her application under Title XVI. Dkt. #5, pp. 47, 232.

_____

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Plaintiff alleged she was disabled due to severe depression, anxiety, tension headaches, migraines, carpal tunnel, panic attacks, suicidal ideation, suicide attempts, hearing loss, tendinitis, and acid reflux. Dkt. #5, p. 268. Plaintiff's claims were denied initially. Dkt. #5, pp. 95-110. Plaintiff requested a hearing, and a telephonic hearing was held on April 27, 2021 before Administrative Law Judge ("ALJ") Richard N. Staples. Dkt. #5, pp. 42-64. Plaintiff appeared with counsel, and her mother was also present.

On examination by the ALJ, plaintiff testified that she had not worked since 2003 and receives public assistance. Dkt. #5, p. 50. She further testified that she has never been hospitalized for psychiatric issues. Dkt. #5, p. 51. However, in 2018, she cut herself, but it did not require treatment. *Id.*

Plaintiff next testified that she lives with her son and daughter, who are 17 and 14 years old, respectively. *Id.* She can care for her children with help from her mother and father, who live next door. Dkt. #5, p. 52. She has a driver's license but had not driven in two months because she "loses focus." *Id.*

Plaintiff testified that her parents do her grocery shopping because she does not like to shop due to anxiety and social phobia. Dkt. #5, pp. 52-53. She takes medicine for the anxiety, which helps "a little bit." Dkt. #5, p. 53. She has friends but does not spend time with them, instead texting or talking on the phone. *Id.*

Plaintiff also testified that she was scheduled for surgery soon to repair an injury to her right shoulder. *Id.* She can dress herself using her right arm, although it is hard. *Id.*

Plaintiff testified that she also has migraine headaches about four times a month, which sometimes make her throw up or be unable to get out of bed. Dkt. #5, p. 54. She also testified that she was 5' 4" tall and weighed 175 pounds, although previously she had weighed as much as 285 pounds. *Id.*

The ALJ noted that plaintiff's medical records referenced carpal tunnel syndrome, and plaintiff testified that her doctors had not yet done nerve conduction studies to confirm whether she has that condition. Dkt. #5, pp. 55. Her left hand is worse, though, and she sometimes wears a brace. *Id.*

Next, plaintiff testified that she has some hearing loss and wears hearing aids. Dkt. #5, p. 56. She testified that she had had ear problems since she was a child, but she only recently got hearing aids. *Id.*

When asked about hobbies or interests, plaintiff testified that she usually lies on the bed or sits on the couch. *Id.*

Plaintiff's counsel did not question her client. Dkt. #5, p. 58.

Next, the ALJ heard testimony from Stella Frank, a vocational expert ("VE"). The ALJ first asked the VE to let him know if anything in her testimony departed or deviated from the Dictionary of Occupational Titles ("DOT") or its companion volume, the Selected Characteristics of Occupations ("SCO"). Dkt. #5, p. 58. The VE agreed to do so. *Id.*

After noting that plaintiff had no past relevant work, the ALJ asked the VE to consider a person with the same age (41), education—some college after high school—and work experience as plaintiff. Dkt. #5, p. 59. The person would be able to lift and carry 10 pounds frequently, and 20 pounds occasionally in an 8-hour workday with normal breaks. *Id.* She can sit about 6 hours and stand and/or walk for about 6 hours. *Id.* She can frequently, but not continuously, handle and finger bilaterally. *Id.* She also can only occasionally reach overhead with her dominate right arm. *Id.* She should never climb ladders, ropes, or scaffolds, and never work at unprotected heights or around dangerous machinery. *Id.*

Further, the person can concentrate and persist and sustain pace adequately to perform simple, repetitive tasks and work where social interaction is not a primary job function. *Id.* She can occasionally interact with coworkers but should not interact with the public as part of her job duties. Dkt. #5, pp. 59-60.

Under this hypothetical, the VE testified that the person could perform the light work jobs of marking clerk, router, and collator operator. Dkt. #5, p. 60.

The ALJ then asked the VE to consider the first hypothetical with the additional limitation that the person would be off task 20% of the time. *Id.* The VE opined that such an off-task percentage would eliminate all competitive employment. *Id.*

The VE next confirmed that the DOT and SCO do not address off-task restrictions or the degree of public or coworker contact for the positions she identified, but she testified that she relies on her professional experience in assessing such limitations. Dkt. #5, p. 61.

Similarly, the ALJ questioned the VE about overhead reaching limitations:

Q. [W]ith respect to the limit to occasional overhead reaching with the right dominant upper extremity, again, correct me if I'm wrong. *My understanding though is that the [DOT] and its companion volume do not differentiate in directions of reaching or whether reaching is with the dominant or non-dominant extremity. Is it your testimony that these three jobs could be performed with only occasional overhead reaching with the right arm based on your professional experience?*

A. *Yes, that is correct.*

Q. Okay. *Now, if we looked at those jobs as they're described in the DOT and the SCO, it would likely indicate the jobs required more than occasional reaching, is that correct?*

A. *Yes, that is correct.*

ALJ. *But would not differentiate in directions.* Okay. Thank you.

*Id.* (emphasis added).

Plaintiff's counsel than questioned the VE about off-task, absenteeism, and break limitations, but she did not ask the VE about overhead reaching limitations or their interplay with the DOT. Dkt. #5, pp. 62-63.

On May 13, 2021, the ALJ issued an unfavorable decision. Dkt. #5, pp. 17-41. The Appeals Council denied plaintiff's request for review on June 2, 2022, Dkt. #5, pp. 6-11, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or

which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since May 31, 2018, the amended alleged onset date; (2) plaintiff has the severe impairments of fibromyalgia; obesity; bilateral carpal tunnel; partial right rotator cuff tear and impingement syndrome in the right shoulder; bipolar disorder; and depression and

anxiety; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform light work[2], except she can lift and carry 10 pounds frequently and 20 pounds occasionally; in an 8-hour workday with normal breaks, she can sit about 6 hours and stand and/or walk about 6 hours; she should never climb ladders, ropes, or scaffolds and never work at unprotected heights or around dangerous machinery; she can frequently but not continuously handle and finger bilaterally; she can occasionally reach overhead with the right (dominant) upper extremity; she can concentrate, persist, and maintain pace adequately to perform simple, repetitive tasks in work where social interaction is not a primary job function; she can occasionally interact with co-workers; and she should engage in no interaction with the public in the performance of job tasks;  (5) plaintiff has no past relevant work; and (6) considering plaintiff's age, education, work experience, and RFC, plaintiff is able to perform the occupations of marking clerk, router, and collator operator; and (7) plaintiff was not, therefore, disabled within the meaning of the SSA from May 31, 2018, to the date of the ALJ's decision. Dkt. #7, pp. 19-26.


Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 416.967(b).

longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1))*. Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2))*. Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be –

the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

## **Challenges to the ALJ's Decision**

### ***Step Five Analysis***

"At step five of the sequential analysis, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy." *Tafazwa S. v. Comm'r of Soc. Sec.*, 1:22-CV-10736-GRJ, 2023 WL 6390625, at *5 (S.D.N.Y. Oct. 1, 2023). "The Commissioner bears the burden of proof at this step." *Id.* (citations and internal quotation marks omitted).

In *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87 (2d Cir. 2019), the Second Circuit explained that under a 2000 Social Security Administration Policy Interpretation Ruling, the Commissioner relies primarily on the DOT to determine whether a particular job can accommodate a claimant's limitations, but she may also use vocational experts to resolve complex vocational issues. *Id.* at 91 (citation and internal quotation marks omitted).

If the Commissioner considers the testimony of vocational experts, she must be alert to any apparent unresolved conflicts between their testimony and the DOT. *Id.* Further, the Commissioner has an affirmative responsibility to ask about any such

conflict and to elicit a reasonable explanation for the conflict before relying on the vocational expert's testimony. *Id.*

Here, plaintiff argues that there was an unresolved conflict between the vocational expert's testimony that plaintiff could perform the jobs of marking clerk, router, and collator operator—which all require frequent reaching—and the RFC, which limited plaintiff to only "occasional" reaching with her right dominant upper extremity. Dkt. #6-1, pp. 13-24. The Court disagrees.

First, It is not disputed that the DOT, in defining "reaching," is silent as to whether reaching in all directions and with both arms is required.

Second, courts in the Second Circuit have repeatedly held that "where the DOT is silent on an issue such as overhead reaching, the VE's testimony on that issue is not in conflict." *Crespo v. O'Malley*, CIVIL ACTION NO.:22 Civ. 954 (SLC), 2024 WL 1255431, at *8 (S.D.N.Y. Mar. 25, 2024) (citations omitted). *See also Tameka G. v. Comm'r of Soc. Sec.*, 22-CV-06056, 2024 WL 2817600, at *5 (W.D.N.Y. June 3, 2024) (no conflict between plaintiff's 5% limitation for overhead reaching with her right arm and jobs requiring reaching; plaintiff was not limited in use of her left arm); *Crespo*, 2024 WL 1255431, at *8 (no conflict between plaintiff's inability to reach overhead with her left arm and VE's testimony that she could perform jobs requiring frequent reaching); *Peter L. v. Comm'r of Soc. Sec.*, CASE # 1:21-cv-00341, 2024 WL 150098, at *4 (W.D.N.Y. Jan. 12, 2024) (no conflict between plaintiff's limitation to only occasional reaching with right

dominant arm and VE's testimony that he could perform jobs requiring frequent reaching; DOT did not indicate that jobs required ability to reach with both arms); *Tafazwa S.*, 2023 WL 6390625, at \*6 (similar); *Malespin v. Kijakazi*, 22-CV-4087 (JLC), 2023 WL 4717958, at \*12 (S.D.N.Y. July 25, 2023) (no conflict between jobs proposed by VE and RFC limiting plaintiff's exposure to excessive light; DOT did not mention excessive light); *Makeda T. v. Comm'r of Soc. Sec.*, 6:20-CV-06867 EAW, 2022 WL 4462237, at \*7 (W.D.N.Y. Sept. 26, 2022) (no conflict between RFC and jobs identified by expert where definition of "light work" did not state that lifting and carrying requirements must be satisfied by a single arm); *Mandato v. Comm'r of Soc. Sec.*, 1:22-cv-04000, 2023 WL 6237683, at \*13 (S.D.N.Y. Sept. 26, 2023) (no conflict with VE testimony and RFC because DOT did not address off-task limitations); *John B. v. Comm'r of Soc. Sec.*, Case # 19-cv-01113, 2021 WL 681283, at \*4 (W.D.N.Y. Aug. 20, 2021) ("Courts in this district have repeatedly found that when the DOT is silent on an issue, no actual conflict exists between the VE testimony and the DOT.").

The Court recognizes that some courts have nonetheless found an apparent conflict between a VE's testimony and an RFC limitation on similar fact patterns. *See, e.g., Julio A.P. v. Kijakazi,* 23-CV-624-A, 2024 WL 3439503, at \*3 (W.D.N.Y. July 17, 2024) (so holding and collecting cases).

Nonetheless, the Court believes it must be guided by authority from the United States Court of Appeals for the Second Circuit.

In *Colvin v. Berryhill*, 734 F. App'x 756 (2d Cir. 2018), the Court of Appeals held that substantial evidence supported the Commissioner's step five determination where the RFC limited the plaintiff—who was missing the distal tips of three fingers on his left hand—to occasional handling and no fingering with that hand. *Id.* at 759. The jobs identified by the VE, however, required either frequent handling or constant fingering. *Id.*

The Court found no conflict with the DOT definitions because "they do not state that a worker must be able to perform such handling or fingering with both hands, specifically, with a non-dominant hand as well as a dominant hand." *Id.* The Court further observed that "[t]he law recognizes that vocational experts may be useful in supplementing the definitions in such circumstances," and that the vocational expert's testimony that the plaintiff could meet the manipulative requirements of the jobs notwithstanding the limitations on his left hand supported the Commissioner's step five conclusions. *Id.*

Other courts in this Circuit have relied on *Colvin* to find no conflict between an RFC with limitations on one side of plaintiff's body and DOT listings or regulations that are silent as to whether the use of both extremities is required. *See, e.g., Crespo*, 2024 WL 1255431, at *8 (citing *Colvin* and stating: "In any event, while the DOT definitions of these three jobs suggest that a worker would need to engage in frequent handling, they do not state that the worker must be able to perform those tasks with both hands simultaneously."); *Makeda T.*, 2022 WL 4462237, at *7 (citing *Colvin* and finding no

conflict where definition of "light work" does not state that plaintiff must be able to lift and carry with a single arm).

More recently, the Court of Appeals considered an alleged conflict between the DOT and the plaintiff's need for a sit/stand option, use of a cane, and tinted glasses. *Gibbons v. Comm'r of Soc. Sec.*, No. 22-2730, 2023 WL 3830774 (2d Cir. June 6, 2023) (summary order). The Court held, in part: "The ALJ did not err because these limitations do not conflict with the Dictionary, *which the parties agree does not include these limitations*." *Id.* at *4 (emphasis added). The Court thus concluded that the ALJ's step-five determination did not run afoul of *Lockwood* with respect to these limitations. *Id.*

Additionally, as this Court has previously noted, *Lockwood* is distinguishable from cases, such as this, where the physical limitation in question pertains only to one side of the plaintiff's body because *Lockwood* involved an RFC that excluded *all* overhead reaching tasks with both hands. *Tameka G.*, 2024 WL 2817600, at *6. *See also John B.*, 2021 WL 681283, at *8 ("Unlike the facts in *Lockwood*, [the ALJ's] RFC did not preclude plaintiff from all reaching but limited him to occasional overhead reaching with the right arm only.").

Finally, as the above discussion indicates, the ALJ here obtained an assurance from the VE that she would identify any conflicts between her opinions and the DOT, and she testified that, based on her professional experience, the three jobs she identified could be performed with only occasional overhead reaching with the right arm.

Dkt. #5, p. 61. Thus, even if an apparent conflict existed, such testimony was sufficient to resolve it. *Peter L.*, 2024 WL 150098, at *4; *Mandato*, 2023 WL 6237683, at *12-13; *Hallman v. Comm'r of Soc. Sec.*, CASE # 19-cv-00683, 2020 WL 3259255, at *5 (W.D.N.Y. June 16, 2020).

The Court thus concludes that plaintiff has not shown that remand is warranted on this basis.

### *Weight Afforded to Medical Opinions of Record*

Plaintiff's next argument is that the weight that the ALJ gave to conflicting medical opinions of record was not supported by substantial evidence. Dkt. #6-1, pp. 24-30.

Specifically, plaintiff argues that the ALJ improperly found only the opinion of state agency psychological consultant L. Blackwell to be persuasive, while he found the other medical opinions not persuasive.

First, before he considered the medical opinions, the ALJ reviewed plaintiff's report of her activities of daily living, which indicated that, despite her anxiety and depression, she was able to "drive, keep house, care for pets, do dishes, sweep, vacuum, fold clothes, read, draw, paint, cook, shop online, pay bills online, and spend time with others." Dkt. #5, p. 26.

The ALJ then reviewed plaintiff's long history of anxiety, depression, and headaches. He noted that her symptoms had worsened in 2018 after the death of her brother and difficulty with her ex-husband due to his failure to pay child support. Dkt. #5, p. 27. However, the ALJ noted that, under the care of Nurse Practitioner Heather Green for medication management and counselling with licensed social worker Maria Gigliotti, plaintiff reported that her mental symptoms improved. *Id.* The ALJ also noted that plaintiff's medical records reflected that her symptoms of anxiety and depression were under control with no more than conservative care in the year following her amended alleged onset date of May 21, 2018. *Id.*

Next, the ALJ considered plaintiff's examination by consultative psychological examiner Dr. Christine Ransom on November 8, 2018. Dr. Ransom stated that plaintiff reported that her depression was "very mild and episodic;" her medications were "quite effective;" she occasionally needed "a mild adjustment in her medications to continue her current stabilized situation;" Xanax was helpful for her anxiety; she "rarely, if ever" needed to take her other anxiety medication; and she denied ongoing clinical depression, anxiety, panic attacks, and suicidal thoughts. *Id.*; Dkt. #5, pp. 504-505.

Next, the ALJ noted that, after plaintiff's claim for benefits was denied at the initial level, she began seeing Nurse Practitioner Deborah Casson, reported significant mental symptoms, and stated that she was trying to get approved for Social Security benefits. Dkt. #5, pp. 28, 581. In September 2019, however, plaintiff reported to N.P.

Casson that she was sleeping better, no longer having nightmares, and was able to perform household chores. Dkt. #5, pp. 28, 583.

That same month, plaintiff reported to N.P. Green that her depression was "the worst it has been" and that her anxiety was "barely manageable" and that "she rarely leaves the house." Dkt. #5, pp. 28, 577. In December 2019, plaintiff reported to N.P. Green that her depression and anxiety were improving on her current medications, and her headaches had resolved. Dkt. #5, pp. 28, 646.

The ALJ then noted that on March 4, 2020, plaintiff reported to a neurologist, who she saw for headaches, that her stress level was "okay." Dkt. #5, pp. 28, 602.

Against this backdrop, the ALJ turned to the medical opinions regarding plaintiff's mental functioning. The ALJ reviewed the opinions of Green, Gigliotti, and Casson that plaintiff was "fully disabled;" unable to engage in full-time competitive employment on a sustained basis; and "incapable of employment at this time, or possibly ever." Dkt. #5, pp. 31, 449, 594, 601.

The ALJ found all three of these opinions "not persuasive." Dkt. #5, pp. 31-32. He noted that all three providers failed to reconcile their opinions with the evidence showing that plaintiff's symptoms had improved within a year of establishing care with them. Dkt. #5, pp. 28-29. He also noted that Green's opinion was inconsistent with the

evidence showing plaintiff's good mental functioning on her consultative and treating exams, as well as her independence in daily living. Dkt. #5, p. 31.

The ALJ explained that Gigliotti and Casson's opinions were similarly inconsistent with the treatment records showing that plaintiff's symptoms were managed with medication and that plaintiff had reported "okay" stress levels in 2020.

Finally, the ALJ stated that Green and Casson's opinions were not persuasive because, in part, they opined on matters reserved to the Commissioner. Dkt. #5, pp. 31-32.

Next, the ALJ considered Dr. Ransom's opinion. The ALJ acknowledged her expertise as a specialist, but he found her opinion that plaintiff had only "mild psychiatric conditions that will not significantly interfere with the claimant's ability to function on a daily basis" to be not persuasive. Dkt. #5, p. 32. He explained that Dr. Ransom had not had the opportunity to review the entire record, which showed that plaintiff's symptoms increased under stress, and he concluded that plaintiff should be limited to simple work involving limited interactions with others. Dkt. #5, p. 32.

Lastly, the ALJ found persuasive the opinion of state agency psychological consultant, L. Blackwell. Dkt. #5, p. 33. Dr. Blackwell opined that plaintiff was "moderately" limited in certain concentration and persistence, social interaction, and adaptation areas. Dkt. #5, pp. 76-78. The ALJ found Dr. Blackwell's opinions persuasive because he is a

specialist; he supported the opinions with specific references to plaintiff's treatment records; and his opinions were consistent with those records. Dkt. #5, p. 33.

Having reviewed the record, the Court concludes that plaintiff's argument that there is conflict between the ALJ's assessment of persuasiveness to Blackwell's opinion and his assessment of non-persuasiveness to the other medical opinions is without merit. Rather, the ALJ reasonably reconciled diverging medical opinions and provided acceptable reasons for the weight he afforded them.

First, it is well established that whether plaintiff qualifies as disabled under the statute is a decision reserved to the Commissioner, and opinions about that fact "have little evidentiary weight." *Otis L. v. Comm'r of Soc. Sec.*, 1:24-cv-04347-GRJ, 2025 WL 219355, at *4-5 (S.D.N.Y. Jan. 15, 2025) (citations and internal quotation marks omitted). *See also Jonathan G. v. Comm'r of Soc. Sec.*, 1:23-cv-00989, 2023 WL 10674590, at *5 (S.D.N.Y. Nov. 30, 2023) ("However, to the extent that both physicians believed Plaintiff was "totally" disabled, . . . the ALJ was not obliged to give special weight to such conclusions, as that issue is reserved to the Commissioner.").

It was therefore not error for the ALJ to reject Green, Gigliotti, and Casson's opinions that plaintiff was disabled.

The ALJ also did not err in finding Dr. Blackwell's opinion persuasive. Plaintiff argues that Dr. Blackwell's opinion was "stale" because it was rendered in

November 2018, and he did not have the opportunity to review plaintiff's medical records between that time and the date of the plaintiff's hearing in 2021. Dkt. #6-1, pp. 24-30.

"However, as the Commissioner correctly argues, an ALJ need not disregard a medical opinion just because evidence was entered into the record post-dating the opinion." *Brian K. v. Comm'r of Soc. Sec.*, 5:24-CV-26 (CFH), 2025 WL 18718, at *6 (N.D.N.Y. Jan. 2, 2025) (citation and internal quotation marks omitted). "Instead, the key inquiry is the consistency of the opinion with the later generated evidence." *Id.*

Here, the ALJ specifically found that Dr. Blackwell's findings were "consistent" with the records showing that plaintiff's mental symptoms had stabilized and "her lack of ongoing care since February 2020." Dkt. #5, p. 33.

Further, it "is plaintiff's burden to show that her condition deteriorated after the medical opinions were provided." *Samantha T. v. Comm'r of Soc. Sec.*, CASE NO. 1:22-cv-00139, 2024 WL 4582825, at *5 (W.D.N.Y. Oct. 25, 2024) (citation and internal quotation marks omitted).

Plaintiff attempts to carry that burden by arguing that, after 2018, "she required multiple medication changes to address ongoing and persistent symptoms." Dkt. 6-1, p. 28. This argument is a familiar one. *See id.* ("Here, plaintiff claims her condition deteriorated as evidenced by medication changes."). However, it is belied by the record.

First, the treatment record of N.P. Green from October 22, 2018—cited by plaintiff as evidence that her agoraphobia had worsened, Dkt. #6-1, p. 28—was specifically considered by Dr. Blackwell in his opinion. Dkt. #5, p. 77.

Second, the post-2018 medical records reflect a mostly linear continuation of plaintiff's intermittent symptoms, largely managed by medications, with her reporting in March 2020 that her stress level was "okay." Dkt. #5, pp. 28, 602. She has thus not shown that her mental condition deteriorated after 2018 sufficiently to render Dr. Blackwell's opinion stale. *Samantha T.*, 2024 WL 4582825, at *5 ("Indeed, plaintiff had medication changes over the relevant period of seven years and additional mental impairments were diagnosed, but new diagnoses alone do not, alone, render opinions stale.").

Lastly, the Court notes that plaintiff criticizes the ALJ's conclusion that Dr. Ransom's opinion was not persuasive. Dkt. #6-1, p. 24. However, Dr. Ransom opined that plaintiff showed "no evidence" of difficulties in a variety of work-related functions and only "mild" limitations in the ability to function on a daily basis. Dkt. #5, pp. 506-507. The ALJ rejected these opinions and crafted an RFC that assumed *greater* limitations in plaintiff's functioning.

"The Second Circuit and this Court have repeatedly affirmed decisions where the ALJ incorporated additional RFC restrictions beyond what a medical source identified." *Waledahmad A. v. Comm'r of Soc. Sec.*, # 1:22-cv-398-DB, 2024 WL 3722697, at *9 (W.D.N.Y. Aug. 8, 2024) (citations omitted). *See also Otis L.*, 2025 WL 219355, at *4

("The Court finds no error in the ALJ's conclusion that Plaintiff was somewhat more limited than the medical opinion evidence suggested, but not so limited as to be considered disabled within the meaning of the Social Security Act.) (citations omitted).

In sum, the Court "finds that the ALJ synthesized the multiple medical opinions in the record into an RFC finding that may not have mirrored any single opinion, but that was consistent with the record as a whole." *Id.* at *10 (citations omitted).

The ALJ's decision is thus supported by substantial evidence and must be affirmed.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #6) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #8) is granted.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:      Buffalo, New York

            January 27, 2025


                                         s/ H. Kenneth Schroeder, Jr.
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**